RACHEL E. KAUFMAN (CAL BAR NO. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorney for Plaintiff and the Classes*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TUSO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL HEALTH AGENTS, LLC, a Florida company, INTERSTATE BROKERS OF AMERICA, LLC, a Florida company, SERVICE INDUSTRY TRADE ALLIANCE, a non-profit Arizona corporation, FIRST CONTINENTAL LIFE & ACCIDENT INSURANCE COMPANY, Inc., a Texas corporation, FIRST HEALTH GROUP CORP., a Delaware corporation, and DOES, 1 through 10, inclusive,<br><br>Defendants. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Richard Tuso ("Plaintiff Tuso" or "Tuso") brings this Class Action Complaint and Demand for Jury Trial against Defendant National Health Agents, LLC ("Defendant NHA" or "NHA"), Defendant Interstate Brokers of America, LLC ("Defendant Interstate Brokers" or "Interstate Brokers"), Defendant Service Industry Trade Alliance ("Defendant SITA" or "SITA"), Defendant First Continental Life & Accident Insurance Company, Inc. ("Defendant First Continental" or "First Continental") Defendant First Health Group Corp. ("Defendant First Health" or "First Health") and John Does ("Does") to stop the Defendants from directing agents

to violate the Telephone Consumer Protection Act by making pre-recorded calls to consumers *without their consent*, including more than one unsolicited call to phone numbers registered on the National Do Not Call registry ("DNC") and to otherwise obtain injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Tuso, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Richard Tuso is a resident of Roseville, California.

2. Defendant NHA is a Florida registered company headquartered in Ft. Lauderdale, Florida. Defendant NHA conducts business throughout this District, the State of California and the United States.

3. Defendant Interstate Brokers is a Florida registered company headquartered in Ft. Lauderdale, Florida. Defendant Interstate Brokers conducts business throughout this District, the State of California and the United States.

4. Defendant SITA is an Arizona registered non-profit corporation believed to be headquartered in Arizona. Defendant SITA conducts business throughout this District, the State of California and the United States.

5. Defendant First Continental is a Texas registered corporation headquartered in Sugar Land, Texas. Defendant First Continental conducts business throughout this District, the State of Texas and the United States.

6. Defendant First Health is a Delaware registered corporation headquartered in Downers Grove, Illinois. Defendant First Health conducts business throughout this District, the State of Illinois and the United States.

7. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOES is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOES when such identities become known.

**JURISDICTION AND VENUE**

8. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

9. This Court has personal jurisdiction over the Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District, and the wrongful conduct giving rise to this case was directed to Plaintiff in this District.

**INTRODUCTION**

10. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." Barr v. Am. Ass'n of Political Consultants, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or pre-recorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or pre-recorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. While "prior express consent" is required for all automated and pre-recorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver pre-recorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).*

14. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

15. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

16. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day,. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

17. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

18. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

19. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

20. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

21. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

22. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**NHA and Interstate Brokers Place Pre-recorded Calls to Consumer Cell Phones Without Prior Express Written Consent**

23. Both the NHA and Interstate Brokers sell insurance plans as well as supplemental health plans to consumers.[3]

24. NHA and Interstate Brokers are owned and operated by the same management.

25. NHA and Interstate Brokers of America are located in the same location at the same suite number.

Mailing Address

1500 W. CYPRESS CREEK RD. #206
FT. LAUDERDALE, FL 33309
National Health Agents [4]

Name: INTERSTATE BROKERS OF AMERICA

Address: 1500 W CYPRESS CREEK RD STE 206
FT LAUDERDALE, FL 33309-1849

Phone: 888-201-5261 [5]

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.interstateba.com/

[4] http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=OfficerRegisteredAgentName&directionType=Initial&searchNameOrder=YELLOWSNOOKSBOCALLC%20L170002046020&aggregateId=flal-l17000204602-207bd7bc-7fcc-4a3d-8b6a-8918a6e16367&searchTerm=yellow%20snooks%20boca&listNameOrder=YELLOWSNOOKSBOCALLC%20L170002046020

[5] https://apps.doi.idaho.gov/Licensing/search?&Id=194320&Lic=780387&Type=AGY

26. Gregory Robbins shows in his Linked profile that he is the owner of Interstate Brokers while at the same time he is registered with Florida's division of corporation as the manager of Defendant NHA, National Health Agents. [6]

[7]

27. Upon information and belief, NHA and Interstate Brokers are one and the same, working for and representing each company interchangeably.

28. NHA and Interstate Brokers make pre-recorded calls to consumers regarding health plans without their prior written consent and to consumers who are registered on the Do Not Call registry.

29. When placing unsolicited pre-recorded calls to consumers, the name Interstate Brokers is used in the pre-recorded messages, as per Plaintiff's experience. When a consumer

---

6 http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=OfficerRegisteredAgentName&directionType=Initial&searchNameOrder=YELLOWSNOOKSBOCALLC%20L170002046020&aggregateId=flal-l17000204602-207bd7bc-7fcc-4a3d-8b6a-8918a6e16367&searchTerm=yellow%20snooks%20boca&listNameOrder=YELLOWSNOOKSBOCALLC%20L170002046020

7 https://www.linkedin.com/in/gregory-robbins-8a2414102/

talks to an agent, the agent may provide *NHA's phone number* as a call back number similar to Plaintiff's experience.

30. In Plaintiff Tuso's case, Interstate Brokers and NHA made multiple unsolicited pre-recorded solicitation calls to Plaintiff's cell phone.

31. There are a multitude of complaints posted online regarding calls placed by NHA and Interstate Brokers, including allegations of pre-recorded solicitation calls and calls being made to phone numbers registered on the DNC. This is a small sampling of those complaints, many of which were directed on NHA's Better Business Bureau ("BBB") page:

**NHA BBB Complaints:**

- "***RoboCalling Because you contacted me on my cell phone, at a number listed on the national Do Not Call registry***… Your company is using a robocaller to make contact… The 2 numbers used to call my number were XXX-XXX-XXXX and XXX-XXX-XXXX. Both numbers were used in the illegal calls to my cell number"[8] (emphasis added)
- "***I contacted company about robocalls to my cell phone*** and requested copy of their Do Not Call List Policy. They did not respond or provide policy. I contacted company via mail on 12/7/18 about robocall to my cell phone made on 11/28/18 initiated with a pre-recorded message selling their product/services. During the 11/28/18 call, a pre-recorded message came on and then, ****** came on the line after the pre-recorded message. I inquired with ****** about which company she was with and she indicated she was with National Health Agents and provided a call back number of XXX-XXX-XXXX x 1416. The number provided by ****** was the number listed on the BBB for National Health Agents… ***My number is on the Do Not Call List***… They did not provide policy or respond to any of my communications."[9] (emphasis added)
- "Repeated harassing sales calls from an agent of this business I have been receiving multiple sales calls per day from National Health Agents. The calls come from New York and California numbers, but when I reach an agent, I am given the callback number XXX-XXX-XXXX. My requests to be placed on their Do Not Call list are not being honored, and on the most recent call today, I was told that they have no control over their Do Not Call list."[10]

[8] https://www.bbb.org/us/fl/boynton-beach/profile/health-insurance/national-health-agents-llc-0633-90408710/complaints
[9] *Id.*
[10] *Id.*

- "Company calls 3-4 times per week to a do not call number. Refuses to remove phone number from their autodialer. ***Abide by the National Do Not Call list***."[11] (emphasis added)
- "This company called me REPEATEDLY from this FAKE local phone number ************* When you ask them who they are and how they got your information, they HANG UP ON YOU. They also gave me multiple fake names for their company. One person said "healthcare qualification center" and another said, "insurance solutions". I decided to call back and play along with their intrusive questions and was transferred to a "licensed agent". When I asked for his contact information, I was given: ************ (also was told to use option #2 to dial his extension, which is ****** I am on the "do not call" list and they are breaking the LAW with this harassment. HOW DARE this company harass people with these non-stop calls. SO GLAD there are ongoing class-action lawsuits against companies like this. I will have all the phone records available for these calls, when a class-action suit is finally filed against these jerks."

**Online Caller Complaints:**

- "'Rachel' from 'Interstate Brokers' left a message saying she would try to help me find an affordable health plan. Yeah right. Caller ID showed her calling from 928-793-0185 but she said to call her back at 888-303-1182."[12]
- "Received an ***unsolicited call at my cell which is registered as 'do not call'*** from "Rachel" since healthcare open season was 'extended' -- call came from 959-210-9520 but was told to call back to 888-303-1182."[13] (emphasis added)
- "Scam call. This entity, 'Interstate Brokers', has called previously using other spoofed numbers, wanting to discuss 'better health coverage' and 'lower monthly premiums.' This time it was Rachel, and the caller ID came up as 707-216-2355. Reported to FTC and blocked. Stay away from these guys."[14]
- "Called by this number from Rachel with "Interstate Brokers" (doesn't exist) about healthcare options, gave number which is now also blocked: (947) 252-8487"[15]

**NHA and Interstate Brokers Call to Sell Consumers Plans by SITA, Continental, First Health, and DOES**

32. Defendant SITA is a membership-based organization that provides consumers

[11] *Id.*
[12] https://800notes.com/Phone.aspx/1-888-303-1182
[13] *Id.*
[14] https://800notes.com/Phone.aspx/1-888-303-1182/2
[15] https://800notes.com/Phone.aspx/1-947-252-8487

with, among other things, discounted group health plans.[16]

33. By enrolling in a discounted health plan, a consumer receives discounts on prescriptions and other supplemental insurance benefits.[17]

34. The cost for a SITA membership is $9 per month.[18]

35. In Plaintiff's case, Plaintiff was solicited a SITA membership which included enrollment in the Evolve Health plan.

36. Plaintiff was told that the Evolve Health plan is the name of the plan, provided by Defendant First Continental, a provider of supplemental insurance products.[19]

37. As per the plan Plaintiff received by email, when a consumer purchases a SITA membership including Evolve Health, the billing is listed under Evolve Health, meaning First Continental is paid directly by the consumer:

You authorize to charge the credit card or bank account you provided to your sales agent for the monthly dues. Monthly transactions will appear on your bank or credit card account as Evolve Health.

38. When a consumer purchases the SITA health plan, the consumer is also paying Defendant First Health and gaining access to the First Health PPO network.

39. Defendant First Health provides consumers with a PPO (Preferred Provider Organization) network of medical options from whom the consumer will receive a discount for receiving medical services and guidance.

40. Defendants SITA, First Continental and First Health rely on companies such as NHA and Interstate Brokers to engage in telemarketing on their behalf in order to sell SITA

[16] https://www.serviceindustrytradealliance.org/member-preview
[17] *Id.*
[18] *Id.*
[19] http://www.fcldental.com/about-us

memberships that also include First Continental and First Health plans.

41.     Such health plans are provided to consumers at a cost much greater than $9 per month, based on Plaintiff's experience, to cover the costs involved in being part of First Continental, First Health and any other companies/organizations provided for through the SITA membership plan.

42.     Plaintiff's attorneys are not yet aware of the full identities of the companies/organizations who receive payment as a result of the telemarketing that is done on behalf of SITA.

43.     SITA, First Continental, and First Health all benefit financially from the health plans that are sold by telemarketers such as NHA and Interstate Brokers.

44.     The Federal Communication Commission has instructed that corporations such as SITA, First Continental and First Health may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).*

## PLAINTIFF TUSO'S ALLEGATIONS

### NHA and Interstate Brokers Placed Multiple Pre-recorded Calls to Plaintiff's DNC-Registered Cell Phone Number Without His Consent

45.     Plaintiff Tuso registered his cell phone on the DNC on July 2, 2003.

46.     Plaintiff Tuso's cell phone is not associated with a business and is used for personal use only.

47.     Plaintiff has been receiving an ongoing tide of telemarketing calls to his cell phone which are a nuisance and disrupts his life.

48.     To make matters worse, often times the telemarketers identify themselves with a generic name to hide their company's true identity. This frustrates the Plaintiff and other consumers who understand that they cannot stop a company from calling them unless they first identify which company is calling them.

49.     On June 16, 2020 at 8:58 AM, Plaintiff received a call from and/or on behalf of the Defendants using phone number 559-744-5630.

50.     Plaintiff did not answer this call, but a voicemail was left regarding healthcare.

51.     Plaintiff is unsure if this voicemail was pre-recorded and designed to sound live, or from a live caller.

52.     On July 16, 2020 at 2:07 PM, Plaintiff received a call from and/or on behalf of the Defendants using phone number 609-245-5819.

53.     Plaintiff did not answer this call, but a pre-recorded voicemail was left regarding healthcare.

54.     On August 18, 2020, Plaintiff received an unsolicited call from and/or on behalf of the Defendants using phone number 540-202-1011 to his cell phone.

55. Plaintiff did not answer this call, but he received a pre-recorded voicemail right after receiving the 540-202-1011 call, but displaying the phone number 540-202-1012.

56. The pre-recorded voicemail begins halfway through the pre-recorded message:

> "… if you are under the age of 65 and are uninsured or paying more than $200 per month for your healthcare, give me a call back at 844-790-2700 and we can go over these exciting new options. Talk to you soon."

57. On August 21, 2020 at 7:26 AM, Plaintiff received a second unsolicited call to his cell phone from and/or on behalf of the Defendants, this time using phone number 832-210-2434.

58. This call was not answered but the Plaintiff listened to the pre-recorded voicemail displaying the phone number 831-208-5405. The message states:

> "Good afternoon, I hope your day is going well. This is ***Nicole with Interstate Brokers***. Due to recent changes in the structure of healthcare reform, many individuals are qualifying for better health coverage with lower monthly premiums. If you are under the age of 65 and are uninsured or paying more than $200 per month for your healthcare, give me a call back at 844-790-2700 and we can go over these exciting new options. Talk to you soon." (emphasis added)

59. The voice used in this message is identical to the pre-recorded voice Plaintiff received on August 18, 2020.

60. The name Interstate Brokers sounded like a generic name and did not adequately identify the telemarketing company calling, or the company who hired the telemarketing company to call on its behalf.[20]

61. Plaintiff received a third unsolicited call to his cell phone from and/or on behalf of the Defendants on August 26, 2020 using phone number 541-209-7193.

[20] The full and actual name of the company is Interstate Brokers of America, LLC.

62. Plaintiff did not answer this call, but another pre-recorded message was left on Plaintiff's voicemail that cut off halfway through stating:

> "Good afternoon, I hope your day is going well. This is ***Nicole with Interstate Brokers***. Due to recent changes in the structure of healthcare reform, many individuals are qualifying for better health coverage with…" (emphasis added)

63. Frustrated by the calls he was receiving and the generic company name presented, Plaintiff Tuso called 844-790-2700 on August 26, 2020 to determine once and for all the actual companies behind these unsolicited telemarketing calls.

64. Plaintiff spoke with an agent named Kristina Bring who answered Plaintiff's call. Since she did not properly identify the actual company name, Plaintiff feigned interest in her program so that she would send him some information which he hoped would include the actual companies responsible for the unsolicited telemarketing calls he had been receiving.

65. The agent Kristina Bring provided Plaintiff with a health quote which she said was on behalf of First Continental.

66. The agent also told the Plaintiff that her direct number is 866-698-5628 extension 204.

67. On this call, the Plaintiff was transferred to Willie (William) for verification of the plan.

68. Willie provided the phone number 888-201-5261 as another number for Plaintiff to call if he had any questions about the plan he was quoted and took Plaintiff's payment details.

69. 888-201-5261 is the phone number listed on Defendant NHA's website:





*Figure 1: Screenshot from National Health Agents' website*

[21]

70. After the call, Plaintiff received an email from mymemberinfo.com describing the plan, along with a link to the plan itself that Plaintiff would have had to sign in order to complete the transaction.

71. Defendant NHA's 888-201-5261 phone number was included in this email to the Plaintiff.

> If there is anything you need assistance with, please do not hesitate to contact your Sales Agent KRISTINA BRING at 888-201-5261. He or She can assist you with any inquiries you may have.

72. Plaintiff did not sign the plan and did not authorize the payment for the plan.

73. The email also shows that Plaintiff would become a member of Defendant SITA by purchasing the plan:

> General Membership Disclosures
>
> - You understand that you are joining the Service Industry Trade Alliance for the membership plan listed above. The first month membership dues and enrollment fee will be billed today and you agree to be automatically billed each month for the future monthly membership dues.

74. The email also identifies that the Plaintiff would receive an "Evolve Health Membership Plan."

[21] https://nationalhealthagents.com/

Dear Richard Tuso,

**Thank you for initiating the purchase of your new Evolve Health Membership Plan!**
Below you will find some important information to take note of for future reference.

75. Evolve Health is specifically referenced on the SITA website as part of the membership preview:

SITA Home Member Preview Members Access Join SITA

Group Health Access Preview

Fundamental Care

Evolve Health

Limited Benefit Medical and Supplemental Plans

EVOLVE HEALTH [22]

76. Evolve Health is a plan provided by Defendant First Continental.

77. The email that the Plaintiff received also includes a quote which consists of an enrollment fee of $649.90 and monthly dues of $549.95!

SITA PLAN: Choice
SITA MEMBERSHIP EFFECTIVE DATE: Sep 01, 2020
SITA FIRST MONTH DUES PLUS ENROLLMENT FEE: $649.90
SITA MONTHLY DUES: $549.95

78. On information and belief, Defendant SITA retains $9 per month and the remaining amounts are divided between Defendant First Continental, Defendant First Health, and DOES.

[22] https://www.serviceindustrytradealliance.org/member-preview

79. The email also includes that the membership plan includes a non-insurance service through Defendant First Health:

> I understand that benefits related to expenses for normal pregnancy and childbirth are covered up to the limits of the insurance policy only after a 9-month waiting period of being continuously insured on the plan.
> I understand that mental illness benefits are not included. However, as part of my SITA membership I do have a non insurance service available through First Health which could make medical repricing available through contracted providers. This could help address some of these items that are not covered under this insurance policy.

80. Companies such as Defendant First Health and First Continental cannot outsource their telemarketing to others, keep all of the benefits, and not share in any of the liability.

81. Plaintiff Tuso received an additional pre-recorded call on September 15, 2020 at 7:01 AM. The caller left a pre-recorded voicemail identifying herself as Nicole from Interstate Brokers and to call the phone number 844-790-2700. The caller ID shows that the call was made from 947-203-5485.

82. Plaintiff received 2 more calls that left pre-recorded voicemails describing healthcare similar to the above voicemails: one on September 18, 2020 at 9:33 using the caller ID 737-200-5841 and September 29, 2020 at 11:12 AM using the caller ID 518-559-0751.

83. If any of the phone numbers that appeared on the Plaintiff's caller ID are called back such as 947-203-5485, 737-200-5841, or 518-559-0751, each connects to the same pre-recorded system identifying the company as the "Health Enrollment Center."[23]

84. Based on the above, all of the unsolicited, pre-recorded calls alleged in this complaint were placed by, or on behalf of the Defendants.

85. Plaintiff did not provide any of the Defendants with consent to place unsolicited pre-recorded calls to his cell phone number.

[23] Investigation conducted October 22, 2020

86. The unauthorized telephone calls that Plaintiff received from Interstate Brokers and NHA, on behalf of SITA, First Continental, First Health and the DOES, as alleged herein, have harmed Plaintiff Tuso in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his cell phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phones.

87. The calls also wasted Plaintiff's time, as Plaintiff listened to each pre-recorded message and ultimately had to spend valuable time calling NHA and Interstate Brokers back to find out who they were and who they sell on behalf of.

88. In addition, Plaintiff was disturbed to receive an unsolicited pre-recorded phone call to his cell phone at 7:26 AM on August 21, 2020.

89. Seeking redress for these injuries, Plaintiff Tuso, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited phone calls to cellular telephones, and which prohibits unsolicited calls using a pre-recorded voice as well as more than one unsolicited phone call to a residential phone number registered on the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls Made by NHA and Interstate Brokers on Behalf of SITA, First Continental, First Health, and DOES

90. Plaintiff Tuso brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **<u>Pre-recorded No Consent Class</u>:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) called (2) using a pre-recorded voice message, and (3) for whom the Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claims they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendants called Plaintiff, and (5) for whom Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claims they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

91.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff Tuso anticipates the need to amend the Class definitions following appropriate discovery.

92.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

93.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Tuso and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendants' conduct constitutes a violation of the TCPA;

(b)     whether Defendant NHA and Defendant Interstate Brokers placed pre-recorded voice message calls to Plaintiff Tuso and members of the Pre-recorded Class without first obtaining consent to make the calls;

(c) whether Defendant NHA and Defendant Interstate Brokers systematically made multiple calls to Plaintiff and other consumers whose telephone numbers were registered with the DNC;

(c) whether Defendants' prerecorded calls to Plaintiff and other consumers were sent for telemarketing purposes;

(d) whether Defendant NHA and Defendant Interstate Brokers placed calls to Plaintiff and members of the Classes on behalf of SITA, First Continental, First Health and the DOES companies;

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

94. **Adequate Representation**: Plaintiff Tuso will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiff Tuso has no interests antagonistic to those of the Classes, and the Defendants have no defenses unique to Plaintiff. Plaintiff Tuso and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Tuso nor his counsel have any interest adverse to the Classes.

95. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Tuso. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation

necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Tuso and the Pre-recorded No Consent Class)**

96. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

97. Defendants and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff Tuso and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

98. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Tuso and the other members of the Pre-recorded No Consent Class.

99. The Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendants' conduct, Plaintiff Tuso and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Tuso and the Do Not Registry Class)**

100. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

101. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o

person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

102.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

103.    The Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

104.    Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

105.    To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Tuso individually and on behalf of the Classes, prays for the following relief:

106. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Tuso as the representative of the Classes; and appointing his attorneys as Class Counsel;

107. An award of actual and/or statutory damages and costs;

108. An order declaring that Defendants' actions, as set out above, violate the TCPA;

109. An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

110. Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Tuso requests a jury trial.

DATED this 26th day of October, 2020.

By: *<u>/s/ Rachel E. Kaufman</u>*
Rachel E. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorney for the Plaintiff and the putative Classes*