UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TUSO, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>NATIONAL HEALTH AGENTS,LLC, a Florida company, et al.,<br><br>    Defendants. | No. 2:20-cv-02130-JAM-CKD<br><br>**ORDER GRANTING FCL AND SITA'S MOTION TO DISMISS AND DENYING IN PART AND GRANTING IN PART IBA AND NHA'S MOTION TO DISMISS** |

Plaintiff Richard Tuso brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. First Amended Complaint ("FAC") ¶ 7, ECF No. 36. Defendants are: National Health Agents, LLC ("NHA") and Interstate Brokers of America, LLC ("IBA"), two Florida companies that place telemarketing calls selling the insurance services and supplemental health plans of other companies; Service Industry Trade Alliance ("SITA"), a membership-based organization that provides consumers with discounted health plans; and First Continental Life & Accident Insurance Company, Inc. ("FCL"), a

1

provider of supplemental insurance products. Id. ¶¶ 2-5, 22, 31, 35. Plaintiff alleges that IBA and NHA place telemarketing calls on behalf of FCL and SITA. FAC ¶¶ 37,40.

Before the Court are two Motions to Dismiss.[1] Mot. to Dismiss by FCL and SITA ("FCL/SITA Mot."), ECF No. 39; Mot. to Dismiss by IBA and NHA ("IBA/NHA Mot."), ECF No. 40. Plaintiff opposed these motions. Opp'n by Tuso to FCL/SITA Mot. ("FCL/SITA Opp'n"), ECF No. 41; Opp'n by Tuso to IBA/NHA Mot. ("IBA/NHA Opp'n"), ECF No. 42. Defendants replied. Reply by FCL and SITA ("FCL/SITA Reply"), ECF No. 43; Reply by IBA and NHA ("IBA/NHA Reply"), ECF No. 44.

After consideration of the parties' briefing on the motions and relevant legal authority, the Court GRANTS FCL and SITA's Motion to Dismiss and DENIES IN PART and GRANTS IN PART IBA and NHA's Motion to Dismiss.

## I. FACTUAL ALLEGATIONS

The parties are familiar with the factual background of this case—it is set forth extensively in the amended complaint, the parties' briefings, and the Court's prior order. See Order, ECF No. 35. The Court also highlights material allegations throughout this decision. The Court therefore does not restate those allegations here.

## II. OPINION

A. <u>Legal Standard</u>

A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject-matter jurisdiction. See

---

[1] These motions were determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for May 18, 2021.

2

Fed. R. Civ. P. 12(b)(1). Once a party has moved to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

A Rule 12(b)(6) motion challenges the complaint as not alleging sufficient facts to state a claim for relief. See Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. Lazy Y Ranch LTD. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

B. Analysis: FCL and SITA's Motion

In their Motion, Defendants FCL and SITA argue Plaintiff has

not stated a plausible TCPA claim as to FCL and SITA because Plaintiff has failed to allege an agency relationship between FCL and SITA on the one hand and IBA and NHA on the other. FCL/SITA Mot. at 5-8. As an initial matter, it is undisputed that IBA and NHA, not FCL and SITA, actually placed the calls to Plaintiff now at issue. FCL/SITA Mot. at 3; FCL/SITA Opp'n at 4. Thus, Plaintiff is not asserting any direct liability claim against FCL and SITA; rather, he is alleging FCL and SITA are vicariously liable for IBA and NHA's actions which he claims violated the TCPA. FCL/SITA Opp'n at 1, 4.

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Gomez v. Campbell-Ewald Co., 768 F.3d 871, 879 (9th Cir. 2014); see also Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068, 1072 (9th Cir. 2019). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Henderson, 918 F.3d at 1073 (internal citation omitted). In determining whether an agency relationship exists, a key factor is the degree of control exercised by the principal over the agent: for an agency relationship to exist, the principal "must have a right to control the actions of the agent." Naiman v. TranzVia LLC, No. 17-cv-4813-PJH, 2017 WL 5992123 at *6 (N.D. Cal. Dec. 4, 2017) (internal citations omitted). Additionally, "agency can be

4

established expressly, via a showing of actual authority, or it can be inferred, by finding apparent authority or ratification." Id. at *10 (internal citations omitted).

Here, Plaintiff contends he has sufficiently alleged an agency relationship between FCL and SITA on the one hand and IBA and NHA on the other, under all three theories: actual authority, apparent authority, and ratification. FCL/SITA Opp'n at 4.

1. Actual Authority

To state a plausible claim under a theory of actual authority, Plaintiff must allege facts showing that FCL and SITA had the right to control IBA and NHA and the manner and means of the calls IBA and NHA made. Naiman, 2017 WL 5992123 at *6 (internal citation omitted).

FCL and SITA contend Plaintiff's failure to allege either exercised control over IBA or NHA is fatal to their actual authority theory. FCL/SITA Mot. at 6-7; FCL/SITA Reply at 2-3. The Court agrees. Plaintiff has not alleged any facts indicating FCL or SITA directed, instructed, or commanded IBA or NHA to place the calls, let alone that either controlled the manner and means of the calls IBA and NHA placed. See FAC. All Plaintiff has alleged is that: (1) "SITA and First Continental rely on companies such as IBA and NHA to engage in telemarketing on their behalf in order to sell SITA memberships that also include First Continental plans" and (2) "SITA and First Continental all benefit financially from the health plans that are sold by telemarketers such as NHA and Interstate Brokers." FAC ¶¶ 37, 40; see also FCL/SITA Opp'n at 5 (referring the Court to paragraph 37). From these bare conclusory allegations, the Court

cannot infer FCL and SITA had the right to control IBA and NHA.

Nor do the cases Plaintiff cites in opposition save his claims based on actual authority. See FCL/SITA Opp'n at 5. Specifically, Plaintiff cites to In re Jiffy Lube Int'l, Inc., Text Spam Litig., 847 F.Supp.2d 1253, 1258 (S.D. Cal. 2012) and Kramer v. Autobytel, Inc., 759 F.Supp.2d 1165 (N.D. Cal. 2010) to argue "courts have often found similar allegations sufficient to show an agency relationship." Id. Neither case assists Plaintiff. First, the plaintiffs in In re Jiffy Lube specifically alleged that the principal directly "engaged" the agent to conduct a marketing campaign and the principal "directed the mass transmission of wireless spam to the cell phones nationwide." 847 F. Supp. 2d at 1258. By contrast, here there is no allegation that FCL or SITA "directed" any of IBA or NHA's telemarketing actions. Thus, although the court in In re Jiffy Lube did find vicarious liability had been sufficiently pled, plaintiffs in that case alleged more than Plaintiff has here.

Kramer is even less helpful to Plaintiff's position because the Kramer court did not address vicarious liability under the TCPA whatsoever. See 759 F. Supp. 2d 1165. Because Kramer did not address any of the vicarious liability pleading issues raised by Defendants here, the Court agrees with FCL and SITA that Kramer is inapposite. FCL/SITA Reply at 4.

For these reasons, Plaintiff fails to plausibly allege any TCPA claim against FCL and SITA under an actual authority theory.

### 2. Apparent Authority

To state a plausible claim under an apparent authority theory, Plaintiff must allege facts showing that FCL and SITA

"did or said something sufficient to create a reasonable belief" that IBA and NHA had the authority to act on behalf of FCL and SITA. Naiman, 2017 WL 5992123 at *7 (internal citations omitted). Indeed, Plaintiff himself acknowledges that apparent authority arises only "when a third-party reasonably believes that the putative agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." FCL/SITA Opp'n at 5 (citing to In re Fresh & Process Potatoes Antitrust Litig., 834 F.Supp.2d 1141, 1167-68 (D. Idaho 2011))(emphasis added).

FCL and SITA contend that what's missing from the FAC is any allegation that FCL or SITA manifested to Plaintiff that the calls were being placed by IBA and NHA on their behalf. FCL/SITA Mot. at 7; FCL/SITA Reply at 3. Indeed, they argue, there are no allegations that Plaintiff interacted with FCL or SITA whatsoever. FCL/SITA Reply at 3. Given the complete lack of contact between Plaintiff and FCL and SITA, neither of these Defendants could have manifested that the calls were being placed at their behest. Id.

In opposition, Plaintiff fails to identify any manifestation by SITA or FCL to support its apparent authority theory. See FCL/SITA Opp'n. Plaintiff instead focuses only on IBA and NHA's actions, contending: "NHA/IBA represent to consumers, including Plaintiff, that they provide memberships on behalf of SITA and health plan quotes on behalf of First Continental, which is consistent with First Continental and SITA's business model. These representations were confirmed when Plaintiff received an email confirming the call describing the SITA membership and

7

First Continental Plan offered on the call, including the cost for such membership and plan – which was to be paid directly to First Continental – and attempting to bind First Continental and SITA to a health plan and membership, respectively, with Plaintiff. Ultimately, SITA and First Continental authorize telemarketing to sell health plans on their behalf and accept the benefits thereof." FCL/SITA Opp'n at 4. By pleading facts only about the actions of the agents – IBA and NHA – as opposed to those of the principals – FCL and SITA - Plaintiff fails to state a claim based on apparent authority against FCL and SITA. See Naiman, 2017 WL 5992123 at *7.

### 3. Ratification

To state a plausible claim under a ratification theory, Plaintiff must allege facts showing that FCL and SITA knew that IBA and NHA violated the TCPA and knowingly accepted the benefits of those violations. Naiman, 2017 WL 5992123 at *13 (internal citations omitted). That is, FCL and SITA cannot be bound by a ratification made "without knowledge of material facts about the agent's act." Id. at *7; see also Henderson, 918 F.3d at 1075 (explaining that principal must "know[] of the material facts involved in the act it is ratifying.").

FCL and SITA identify two pleading deficiencies with Plaintiff's ratification claim. FCL/SITA Mot. at 7-8; FCL/SITA Reply at 3-4. First, Plaintiff has not alleged any facts showing that either FCL or SITA had any knowledge of the calls at issue let alone that the calls violated the TCPA. FCL/SITA Mot. at 7-8. Second, Plaintiff has not alleged that FCL or SITA actually benefitted from the calls at issue here. Id. at 8. As to SITA,

8

Plaintiff alleges SITA receives $9 if a member joins. FAC ¶¶ 33,75. But he does not allege he joined SITA or that SITA in fact received $9 here. See FAC. As to FCL, Plaintiff alleges that FCL "benefits financially from the health plans that are sold by telemarketers such as NHA and Interstate Brokers." Id. ¶ 40. But Plaintiff does not allege he purchased a plan or that FCL actually received any financial benefit here. See FAC.

In opposition, Plaintiff does not address these pleading deficiencies. See FCL/SITA Opp'n. Instead, Plaintiff cites to a string of caselaw for general ratification principles, see FCL/SITA Opp'n at 6 (collecting cases), but does not apply these principles to the allegations here. Accordingly, Plaintiff's claims based on ratification also fail.

To summarize, because Plaintiff has not plausibly alleged an agency relationship under any of the common law agency theories, Plaintiff's vicarious liability claims against FCL and SITA fail. FCL and SITA's Motion to Dismiss is therefore granted.

The Court further finds it appropriate to grant FCL and SITA's Motion without leave to amend. See Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1046 (9th Cir. 2006) (explaining courts need not grant leave to amend where amendment would be futile). In opposition, Plaintiff had the opportunity to proffer any additional facts that might convince the Court he could plausibly allege an agency relationship between FCL and SITA on the one hand and IBA and NHA on the other. He failed to do so. Additionally, Plaintiff has already amended his complaint. See FAC. Any further amendment would be futile.

    C.    Analysis: IBA and NHA's Motion

In their Motion, IBA and NHA advance two separate arguments as to why Plaintiff's TCPA claims should be dismissed. See generally IBA/NHA Mot. First, they argue the Court lacks subject matter jurisdiction over the portions of Plaintiff's claims concerning calls placed prior to July 6, 2020. IBA/NHA Mot. at 3-7; IBA/NHA Reply at 4-5. Second, they argue Plaintiff has not stated a plausible claim against NHA because Plaintiff has failed to allege NHA and IBA are alter egos. IBA/NHA Mot. at 7-11; IBA/NHA Reply at 1-4.

### 1. Subject Matter Jurisdiction

IBA and NHA challenge the following portions of Plaintiff's TCPA claims: those based on the call Plaintiff alleges he received prior to July 6, 2020, see FAC ¶ 46 (describing June 16, 2020 phone call), and those based on calls received by the putative class prior to July 6, 2020, see id. ¶ 87. Defendants argue the Court lacks subject matter jurisdiction over these portions of Plaintiff's claims following the Supreme Court's decision in Barr v. American Ass'n of Political Consultants, 140 S.Ct. 2335 (2020)(hereinafter "AAPC"). IBA/NHA Mot. at 3-7.

In AAPC, the Supreme Court addressed the constitutionality of the TCPA. See 140 S.Ct. 2335. In a fractured decision, six Justices agreed that, in adding the government-debt exception to the TCPA in 2015, Congress had "impermissibly favored debt-collection speech over political and other speech in violation of the First Amendment." Id. at 2343. Seven Justices agreed that the proper remedy for this constitutional infirmity was to invalidate and sever the government debt exception thereby leaving the rest of the TCPA intact. Id.

In light of the fractured decision, the parties here argue about the sweep of AAPC. Plaintiff insists AAPC invalidated only the TCPA's government-debt exception. IBA/NHA Opp'n at 1, 3-8. Defendants contend AAPC invalidated the entire TCPA as applied to pre-July 6, 2020 conduct; and for this reason, they claim, the portions of Plaintiff's claim concerning conduct prior to July 6, 2020 are not justiciable. IBA/NHA Mot. at 4-7. In support of their position, Defendants cite to the following post-AAPC decisions: Creasy v. Charter Commc'ns, Inc., No. 20-cv-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.[2], No. 5:20-cv-38-Oc-30PRL, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020), and Lindenbaum v. Realgy, LLC, No., 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020). These out-of-circuit, non-binding decisions held that AAPC divests federal courts of jurisdiction over TCPA claims concerning robocalls made before the date of AAPC's issuance even when those robocalls were not made for the purposes of collecting government debt.

However, district courts in the Ninth Circuit that have addressed this issue have consistently held the opposite, finding the TCPA remains enforceable against non-government debt

---

[2] As Defendants acknowledge in their reply brief, see IBA/NHA Reply at 5, the Hussain Court has since disavowed its reasoning and decision in that case, stating in a subsequent decision: "the Court departs from its earlier opinion because, since the Court's Order in Hussain, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-AAPC. The Court, having the benefit now of reading all of these cases, agrees with this majority view." Boisvert v. Carnival Corp., No. 8:20-cv-2076-30, 2021 U.S. Dist. LEXIS 47397, at *4 (M.D. Fla. Mar. 12, 2021).

11

collectors as to the calls made before AAAPC's issuance on July 6, 2020. See e.g. Stoutt v. Travis Credit Union, No. 2:20-cv-01280-WBS, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021); Johansen v. LoanDepot.com LLC, No. 8:20-cv-00919-DOC, 2021 U.S. Dist. LEXIS 19562 (C.D. Cal. Jan. 31, 2021); McCurley v. Royal Sea Cruises, Inc., No. 17-cv-00986-BAS, 2021 U.S. Dist. LEXIS 16403 (S.D. Cal. Jan. 28, 2021); Trujillo v. Free Energy Sav. Co., LLC, No. 5:19-cv-02072-MCS-SP, 2020 U.S. Dist. LEXIS 239730 (C.D. Cal. Dec. 21, 2020); Shen v. Tricolor Cal. Auto Grp., LLC, No. 20-cv-7419 PA, 2020 U.S. Dist. LEXIS 237582 (C.D. Cal. Dec. 17, 2020). Recently, another court in the Eastern District considered the same issue and concluded: "Because the Supreme Court has invalidated and severed the government-debt exception from the remainder of [the TCPA], the exception did not affect the remainder of the statute and the statute remains enforceable, at least against non-government debt collectors, as to calls made between November 2015 and July 6, 2020." Stoutt, 2021 WL 99636 at *5.

This Court agrees with the analysis in Stoutt and finds it may adjudicate all portions of Plaintiff's TCPA claims, including those concerning calls placed prior to July 6, 2020. Accordingly, IBA and NHA's request to dismiss the portions of Plaintiff's claims concerning pre-AAPC conduct is denied.

        2. Alter-ego

IBA and NHA next argue Plaintiff has not plausibly alleged IBA and NHA are alter egos. IBA/NHA Mot. at 7-11; IBA/NHA Reply at 1-4. As such, they ask the Court to dismiss Plaintiff's claims against NHA. IBA/NHA Mot. at 1. In opposition,

Plaintiff contends he has sufficiently alleged that IBA and NHA are alter egos and therefore NHA may be held liable for IBA's TCPA violative calls. IBA/NHA Opp'n at 8-10.

To state a claim that one corporation is the alter ego of another, a plaintiff must plausibly allege that: "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015) (internal citations and quotation marks omitted). "Disregarding the corporate entity is recognized as an extreme remedy, and [c]ourts will pierce the corporate veil only in exceptional circumstances." Calvert v. Huckins, 875 F.Supp.674, 678 (E.D. Cal. 1995); see also Katzir's Floor & Home Design, Inc. v. M-MLS.com., 394 F.3d 1143, 1149 (9th Cir. 2004) (explaining "the mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law.")

As to its alter ego theory, Plaintiff alleges the following: IBA and NHA are two distinct legal entities; each is "a Florida registered company headquartered in Ft. Lauderdale, Florida." FAC ¶¶ 2-3. IBA and NHA are owned and operated by the same management. Id. ¶¶ 23, 25. IBA and NHA are located in the same office at the same suite number. Id. ¶ 24. Plaintiff received unsolicited telephone calls to his cell phone over the course of two and a half months, id. ¶¶ 42-86, including calls accompanied by pre-recorded voicemails stating it was an IBA agent calling, id. ¶¶ 55, 59 (describing voicemails stating "this is Nicole with

13

Interstate Brokers."). Though IBA's name is used in the pre-recorded messages, when consumers speak with a live agent, the agent may provide NHA's phone number as the call back number. Id. ¶ 28. Additionally, follow-up emails regarding the insurance services promoted during calls made in the name of IBA may provide NHA's phone number as the call back number. Id. ¶ 68. According to Plaintiff, "NHA and Interstate Brokers are one and the same, working for and representing each company interchangeably." Id. ¶ 26.

Defendant argues these allegations are insufficient under both prongs of the alter ego test. The Court agrees.

As to the first "unity of interest and ownership" prong, Plaintiff's allegations do not allow the Court to infer NHA controls IBA "to such a degree as to render the latter the mere instrumentality of the former." See Ranza, 793 F.3d at 1073 (explaining that the unity of interest prong "envisions pervasive control ... such as when a parent corporation dictates every facet of the subsidiary's business — from broad policy decisions to routine matters of day-to-day operation."). In making this determination, a court may consider "the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other." Langley v. Guiding Hands Sch., Inc., No. 2:20-cv-00635-TLN, 2021 WL 978950, at *5 (E.D. Cal. Mar. 16, 2021) (internal citations omitted).

Here even taking as true Plaintiff's allegations that IBA

14

and NHA are owned and operated by the same management, that they share office space, and that IBA agents may provide NHA's phone number as the callback number, the Court does not find these allegations plausibly suggest NHA exercised "pervasive control" over IBA. His conclusory assertion to that effect, see FAC ¶ 26, is insufficient. See Iqbal, 556 U.S. at 679.

In opposition, Plaintiff argues that he has alleged more than what plaintiffs in Ranza and Naiman had – the cases Defendants rely on to argue Plaintiff's alter ego theory is improperly pled. Opp'n at 9. But even if Plaintiff has alleged more than what the Ranza and Naiman plaintiffs did, it does not necessarily follow that the allegations here are sufficient. Indeed, the Court does not find Plaintiff's allegations are sufficient to disregard IBA and NHA's separate legal identity; as the FAC acknowledges, IBA and NHA are distinct legal entities: each is a Florida registered LLC. FAC ¶¶ 2-3. It bears repeating that "[d]isregarding the corporate entity is recognized as an extreme remedy." Calvert, 875 F.Supp. at 678.

As to the second prong of the alter ego test, Plaintiff's allegations also fall short. "[U]nder California law the kind of inequitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors." Langley, 2021 WL 978950, at *5 (internal citations omitted); see also FTC v. Noland, No. 20-cv-00047-PHX, 2021 WL 289659 at *4 (D. Ariz. Jan. 28, 2021)( explaining "a plaintiff must plead with specificity that fraud or injustice would result if the corporation were permitted to maintain the fiction of a separate

identity.")

The FAC itself does not expalin how failing to hold NHA liable as IBA's alter ego would result in fraud or injustice. See FAC. Nevertheless, in his opposition brief, Plaintiff contends "failure to disregard the confusing corporate structure involving NHA and IBA would result in fraud or injustice because the structure is designed, at least in part, to obfuscate and limit liability and exposure for TCPA violations." Opp'n at 8-9 (citing to FAC ¶¶ 57, 61-68). Plaintiff has not alleged any facts, however, to support this bald contention. There's no allegation, for example, that IBA is undercapitalized, committed fraud, or exists for any other improper purpose, such as to avoid liability. See Langley, 2021 WL 978950, at *5 (explaining that California courts invoke alter ego liability "when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose."). In the absence of any such allegations, Plaintiff fails to plausibly allege that fraud or injustice would result.

Because Plaintiff has not plausibly alleged IBA and NHA are alter egos, Plaintiffs' claims against NHA are dismissed. The Court also finds amendment would be futile and, therefore, Plaintiff is denied leave to amend its claims against NHA. See Deveraturda, 454 F.3d at 1046. In opposition, Plaintiff had the opportunity to proffer any additional facts that might convince the Court he could plausibly allege IBA and NHA are alter egos. See Opp'n. He failed to do so. Additionally, Plaintiff has already amended his complaint. See FAC. He is not entitled to another opportunity to properly plead his claims against NHA.

### III. ORDER

For the reasons set forth above, the Court GRANTS FCL and SITA's Motion to Dismiss and DENIES IN PART and GRANTS IN PART IBA and NHA's Motion to Dismiss. Plaintiff's claims against FCL, SITA and NHA are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: June 21, 2021

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE